**UNITED STATES of America,**
**Plaintiff,**

v.

**James A. DECKER, Defendant.**
**No. 22992–1.**

United States District Court,
W. D. Missouri, W. D.

April 15, 1970.

---

Paul Anthony White, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Richard H. Brown, Gage, Hodges, Kreamer & Varner, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION DENYING DEFENDANT'S MOTION TO SUPPRESS

JOHN W. OLIVER, District Judge.

### I.

This case pends on defendant's motion to suppress. A full evidentiary hearing was held pursuant to Rule 41(e), Federal Rules of Criminal Procedure. The factual situation, as distinguished from the inferences to be drawn therefrom, are not in substantial dispute. The parties filed excellent briefs which have been fully considered. In addition, defendant has filed four separate requests for 107 supplemental findings of facts. We shall indicate our view in regard to defendant's requested findings in the last part of this memorandum opinion.

Defendant's motion will be denied for the reasons we shall state. We shall make all relevant findings in this memorandum opinion in connection with our discussion of defendant's legal contentions.

### II.

Defendant's contentions are accurately stated in the introduction to his brief filed in support of his motion:

Defendant's motion to suppress should be granted for each of the following reasons:

1. The evidence of the government, against the use of which the motion is directed, was illegally obtained in violation of the defendant's rights under the Fourth, Fifth and Sixth Amendments to the United States Constitution; and

2. The Government's evidence was illegally obtained as a result of misrepresentations, legally the equivalent of fraud, on the part of government agents; and

3. The actions of the government agent in obtaining the offending evi-

dence violated rules, regulations and procedures of the Treasury Department established and promulgated for the purpose of defining, fixing and limiting the duties and activities of agents of the Internal Revenue Service.

We shall discuss each of the three contentions in the order stated.

## III.

In opening his argument in support of his first contention, defendant appropriately states that "the defense concedes that this Court is obliged to follow the dictates of its controlling court as set forth in Cohen v. United States, 405 F. 2d 34 (C.A.8, 1968), cert. den. 394 U.S. 943 [89 S.Ct. 1274, 22 L.Ed.2d 478]; and United States v. Brevik, [422 F.2d 449 (8 Cir.)] decided March 11, 1970." Defendant also concedes that "in those cases the Court of Appeals apparently has held that (in the absence of misrepresentation) a taxpayer has no right to *Miranda* type warnings under the Fifth and Sixth Amendments between the date his tax return is scheduled for 'routine' examination and the date of his indictment for criminal tax fraud."

The Court of Appeals clearly indicated in *Cohen* and in *Brevik* that it agreed with and adopted the rationale of the Second Circuit as illustrated by United States v. Squeri, (2 Cir., 1968) 398 F.2d 785, as opposed to the rationale of the Seventh Circuit as illustrated by United States v. Dickerson, (7 Cir., 1969) 413 F.2d 1111, upon which defendant strongly relies in this case.

Defendant acknowledges that our controlling Court of Appeals has recognized that Fourth Amendment questions may be involved; defendant directs attention to that part of *Cohen* which states that "agents must not affirmatively mislead a taxpayer." But defendant argues that application of "the doctrine of *Cohen* and *Brevik* apparently means [that] the taxpayer * * * receives less protection than does the bank robber who races out of the door of the bank into the arms of a waiting policeman."

Defendant also complains that the Court of Appeals improperly relied upon White v. United States, (8 Cir., 1968) 395 F.2d 170, to support its conclusion in *Cohen* that an internal revenue agent "must not *affirmatively* mislead a taxpayer." Defendant argues that the Court of Appeals stated that conclusion in *Cohen* in reliance upon *White* in spite of the fact that "nowhere in *White* does the qualifying word '*affirmatively*' appear." In summation, defendant argues that "the logical and direct result of the doctrine of *Cohen* and *Brevik* will be to foster and encourage, by giving legal sanction and support to * * * treachery, dishonesty and deceit on the part of government agents * * *."

In addition to the complaints registered against the Court of Appeals in regard to *Cohen* and *Brevik*, defendant's argument in support of his contention would have this Court, in disregard of those cases, expand the rationale of United States v. Dickerson, *supra*, far beyond the circumstances there involved and far beyond what the Seventh Circuit said in that case. Indeed, defendant contends that "the constitutional rights of individuals under the Fourth, Fifth, and Sixth Amendments, are deserving of continuing protection throughout all phases of an investigation which may result in criminal prosecution." And defendant, as he must under the factual circumstances of this case, asserts that if the taxpayer ever could have asserted a constitutional claim at any stage of any internal revenue investigation, the "benefits of these protections can be claimed retrospectively." Specifically, defendant argues that because the defendant may have had the right to refuse to turn over his records to Mr. Gaston, this Court should now "permit the taxpayer to claim his rights retrospectively and that the granting of defendant's Motion to Suppress would accomplish that result."

Defendant urges that we adopt defendant's extension of what the Seventh Circuit actually held in *Dickerson* and to adopt defendant's arguments as this

Court's view "as to the meaning of the Constitution as applied to this defendant and the facts of this case, even though such views may be wholly or partially in conflict with the views announced in *Cohen* and *Brevik*."

■ Under exceptional circumstances we believe that on infrequent occasions it may be appropriate for a lower federal court to indicate that a particular constitutional principle may, in its judgment, be subject to an appropriate reappraisal. The Supreme Court recently noted what both this Court and the Court of Appeals stated in such an exceptional case when it recently decided Ashe v. Swenson, 397 U.S. 436, footnote 4 on page 440 and footnote 5 on page 441, 90 S.Ct. 1189, on pages 1192 and 1193, 25 L.Ed.2d 469.

But this case is not such an exceptional case. Our Court of Appeals has recently and clearly indicated its considered view of the question presented in this case. Indeed, the Eighth Circuit's acceptance of the Second Circuit's rationale makes it plain that our controlling court expects that the district courts of this circuit will apply that rationale in the same manner that other courts have done in regard to comparable factual circumstances. Believing that we should and must follow, rather than question, our controlling court under the circumstances of this case, we need but state and follow the most recent application of the rationale upon which *Cohen* and *Brevik* is based.

United States v. Caiello, (2 Cir. 1969) 420 F.2d 471, but not yet reported, is the latest case which determines that defendant's arguments in support of his first contention are not tenable. Chief Judge Lumbard there stated that "the appeal raises the now familiar question of whether statements and records of a taxpayer under investigation by revenue agents and special agents of the Internal Revenue Service [IRS] may be received in evidence where the taxpayer has not been given the so-called *Miranda* warnings." In that case, as in this (we so find), there was a "complete absence of warnings." Indeed, the factual circumstances in *Caiello* were more favorable to the defendant than those presented in this case because the defendant in that case gave statements and records to both a regular agent and to a special agent whereas in this case only regular agents were involved.

The Second Circuit expressly rejected "the reasoning of the majority opinion in *Dickerson*" and affirmed the District Court's denial of the motion to suppress based on its findings that "the circumstances surrounding his [the defendant's] contacts with the IRS were so coercive as to require the giving of warnings." Chief Judge Lumbard quoted exactly the same language from *Squeri* which the Eighth Circuit quoted and relied upon in *Cohen*. It concluded that the rationale of the "long line" of Second Circuit cases is "that once the taxpayer is aware that agents of the IRS are conducting a serious inquiry into his income tax liability and the agents do not conduct their investigation in a manner which is inherently coercive it is not improper to expect that '[t]o some extent persons must be prepared to look after themselves.' Morgan v. United States, 377 F.2d 507, 508 (1st Cir., 1967)."

In regard to whether the differences between the duties of a regular, as distinguished from a special, agent were concerned, the court stated:

We can see no good reason for requiring government agents to give *Miranda* warnings whenever they deal with a citizen regarding possible tax liabilities under circumstances where the citizen is not under restraint and is at liberty to cooperate or not as he may choose. Every citizen must know and will be deemed to know that he is under an obligation honestly and fully to furnish correct information regarding his income and to pay the taxes which accordingly would be owing to the government. Every citizen also knows that false returns and fraudulent evasion of taxes are criminal offenses in violation of

federal laws. So far as the citizen is concerned his duties and obligations and his liabilities for taxes for violation of law are the same regardless of the duties of the particular agents who may be assigned to investigate his returns, tax liabilities, and possible violations of the criminal law. And, of course, where there is no restraint and the contacts of the taxpayer and the agents extend over some period of time, there is ample opportunity for the taxpayer to seek such advice and assistance from third persons as he may desire.

We are confident from what the Eighth Circuit said in *Cohen* and *Brevik* that it would apply the rationale of *Squeri* and the other Second Circuit cases in the same manner as did the Second Circuit when it decided *Caiello*. We are also confident that our controlling court intended by its decisions in *Cohen* and *Brevik* for the district courts in this Circuit to do the same thing.

█ Accordingly, and for the reasons stated, we conclude that defendant's first contention concerning an alleged "violation of defendant's rights under the Fourth, Fifth, Sixth Amendments" is not tenable.

## IV.

█ Defendant's second contention that the "Government's evidence was illegally obtained as a result of misrepresentations, legally the equivalent of fraud, on the part of government agents" simply is not supported by any credible evidence. Defendant salts his argument in support of his second contention with such conclusory statements as "the agents' misrepresentations misled the taxpayer and as a consequence the defendant surrendered his records" (Supporting Brief, p. 5) and "the evidence in this case establishes misrepresentation, overreaching and unfairness by Agent Gaston" (Ibid, p. 11A). It is apparent, however, that defendant's real contention is based on the notion that, under the circumstances, "silence * *

may constitute fraud" and that "Gaston's 'silence when good faith requires expression' constituted fraud."

Defendant's argument is not tenable because, as detailed in regard to defendant's first contention, none of the agents were under any duty to speak to the defendant concerning the matters about which he complains. It is undisputed and we find that the defendant was never arrested nor was he ever threatened with arrest. He was never in any way deprived of any freedom of action. He knew what the agents were doing and cooperated fully. He was never threatened, coerced, or intimidated in any manner. Nor, indeed, does he even claim that he was. There simply is no basis for finding that any agent misled the taxpayer, affirmatively or otherwise, into believing that the investigation was exclusively civil in character or that it might not lead to the filing of a criminal charge.

We expressly find from all the testimony and other evidence that the defendant has failed to show that the circumstances surrounding his contacts with the various internal revenue agents were so coercive as to require any of those agents to warn him of the possibility of a criminal prosecution. We find that the contrary was true.

We further find that defendant failed, on the facts, to establish the Government obtained any of the defendant's records as a result of any misrepresentation or fraud. We therefore conclude that defendant's second contention in support of his motion is not tenable.

## V.

Defendant's third contention is based primarily on an extension of what the Fourth Circuit held in United States v. Heffner (4 Cir., 1969) 420 F.2d 809. The general theory of defendant's third contention also involves an assumption that "Agent Gaston and the Internal Revenue Service failed to scrupulously observe rules, regulations, instructions and procedures which were established

by the Service, and, therefore, any action taken not conforming thereto is in violation of due process and should not be upheld."

The defendant introduced in evidence many portions of the Internal Revenue Manual which control the reference of a particular case to the Intelligence Division. The general thrust of defendant's argument is that when a revenue agent, as distinguished from a special agent, discovers indications of fraud, "he shall suspend his activities at the earliest opportunity." Defendant contends that Agent Gaston had, or should have had, actual knowledge of the indications of defendant's fraud not later than December 16, 1966, and that all activity of Mr. Gaston after that date, which, of course, included his acceptance of possession of defendant's records, "were not spent in determining if fraud existed but rather in developing a criminal case under the guise of conducting a civil tax audit."

■ There are two reasons why defendant's third contention is not tenable. In the first place, as Chief Judge Lumbard pointed out in *Caiello*, the civil or criminal liability of a citizen for violation of the income tax law and his duty to turn over his records is not dependent upon "the duties of the particular agents who may be assigned to investigate his returns, tax liabilities, and possible violations of the criminal law." Even if it could be assumed that Mr. Gaston should have made an earlier reference to the Intelligence Division, a question which need not be determined under the rationale upon which *Cohen* and *Brevik* is based, the defendant would not have been entitled to any more warnings or anything else which would have changed the circumstances under which he turned over his records.

■ Secondly, on the basis of the facts, as we find them, it is quite clear and we expressly find that Mr. Gaston was not instructed to develop nor did he believe that he was developing a criminal case against the defendant. It is significant, we believe, that the regular routine of the Internal Revenue Service is not to accept the type of completed audit which Mr. Gaston made but for the Special Agent eventually assigned to the case, as was true in this case, to start from scratch in developing the evidence for use in an authorized criminal prosecution. We therefore cannot accept defendant's hindsight reconstruction of what Mr. Gaston must or should have known and what he should have done. We expressly find that what Mr. Gaston actually did was done routinely and that he did not, either on his own initiative or at the direction of anyone else, proceed with his investigation for the purpose of misleading or in any way lulling the defendant into acceptance of the idea that a civil rather than a criminal investigation was being conducted.

For the legal and factual reasons stated, we conclude that defendant's third contention is not tenable.

### VI.

During the Rule 41(e) hearing, consistent with our usual practice, we stated 14 tentative findings of fact at the close of the first day of the hearing. See pages 73 to 93 of the transcript. Defendant has requested that all the findings there tentatively stated be made in connection with our ruling of the pending motion. In addition, the defendant has requested 107 supplemental additional findings, presented in three separate requests, the most recent of which was filed April 10, 1970.

We believe it is appropriate to state candidly that neither side had directed our attention to any legal authorities before the hearing began and that we had not, prior to the first day of that hearing, studied our controlling court's decisions in *Cohen* and *Brevik*. The findings tentatively stated at the end of the first day of the hearing, while undoubtedly accurate, were nevertheless stated without the benefit of and not in the light of those decisions of our controlling court.

It is also apparent that most of the defendant's requested supplemental findings assume that all of defendant's requested findings are relevant and mate-

rial under the controlling applicable law. It should be obvious from what we have said in the early parts of this memorandum opinion that defendant's assumption cannot be entertained. We have concluded that all three of the defendant's legal contentions are not tenable. We have also made particular findings in this memorandum opinion which are directly contrary to some of the findings requested by the defendant.

Under all the circumstances we deem it appropriate simply to state that our findings of the relevant facts are as stated in our memorandum opinion and to indicate which of defendant's requested findings are not, in our judgment, either supported by or are contrary to the weight of the credible evidence.

The 14 tentative findings made at hearing which are restated in defendant's first requested findings of fact are accurate but are generally irrelevant when viewed in light of the applicable law. No further comment is necessary.

The 74 supplemental findings requested by the defendant, generally speaking, are simply a summary of much of the testimony of three witnesses, including the defendant. For the most part, that summary is an accurate summary of irrelevant and immaterial testimony. Particular findings are requested for the obvious purpose of attempting to provide some sort of a factual base for the argument that Agent Gaston kept the defendant's tax file for reasons other than those about which Agent Gaston testified. All of those requested findings, of course, are directly related to defendant's legal argument in support of its third contention.

We have expressly found in earlier portions of this memorandum opinion that there is no significant credible evidence to support any finding that defendant's case was processed in any manner calculated to mislead the defendant into believing that his case might not eventually result in a criminal prosecution. We therefore expressly reject defendant's requested findings which

are calculated to support an inference to the contrary.

We reject defendant's requested findings concerning his impression that someone was going to assist him in preparing an amended return for 1965 (No. 58) and particularly those requested findings that the defendant was justified in believing that he would receive assistance from Mr. Gaston or someone else (No. 67). We also expressly reject the requested finding that defendant had no reason to believe that Mr. Gaston was engaged in any activity other than a determination of taxpayer's tax liability (No. 68). We expressly reject requested finding No. 69 which states that "At no time during Mr. Decker's contact with Mr. Gaston did Mr. Decker have any reason to believe that Mr. Gaston was engaged in any activity other than a determination of tax liability" and requested finding No. 71 which states that defendant "had good reason to believe" that "both agents were of the opinion that the tax matter would be worked out * * * and that the agents were involved in nothing more than a routine civil tax audit."

No one told the defendant anything of that sort nor could any reasonable person make such an assumption under the established circumstances of this case. We reject requested finding No. 72 because we simply do not believe the defendant's testimony that he would not have turned over his records had he believed that anything other than a civil tax investigation was involved. We have the feeling that defendant was fully cognizant of the possibility of criminal prosecution but that he reasoned that if he refused to turn over his records, any remote chance of avoiding criminal prosectuion would be eliminated.

Defendant's second and third requests for supplemental findings 75 through 107 inclusive follow a pattern similar to that followed in regard to the first 74 requested findings. Most of the findings requested in the second group attempt to lay a foundation for an ulti-

mate requested finding that "Agent Gaston knew prior to December 20, 1966 that there had been a substantial understatement of income and that the indications were that the understatement was deliberate" (quoted from No. 87). In light of what is stated above, it is not necessary to repeat why that circumstance and the other requested findings are immaterial and irrelevant under the applicable law.

Defendant's reiteration in requested finding No. 100 of all of the reasons why anyone with Agent Gaston's knowledge should have seen that there were indications of criminal fraud in connection with defendant's 1965 tax return merely sets forth the circumstances upon which the Government will undoubtedly base its jury argument at the time of trial. We expressly reject that requested finding and requested findings 101 through 107 as being contrary to the findings we have made in our memorandum opinion and for the further reason that such requested findings are either contrary to or not supported by the weight of the credible evidence.

### VII.

For the reasons stated, it is

Ordered that defendant's motion to suppress should be and the same is hereby denied.